In re Virginia A. TRAVERSE, Debtor.

Mark G. DeGiacomo, Chapter 7
Trustee, Plaintiff–Appellee,

v.

Virginia A. Traverse, Defendant–
Appellant.

BAP No. MB 12–025.
Bankruptcy No. 11–17703–WCH.
Adversary No. 11–01349–WCH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 4, 2013.

David G. Baker, Esq., Boston, MA, on brief for Appellant.

Mark G. DeGiacomo, Esq., Boston, MA, and Keri L. Wintle, Esq., on brief for Appellee.

Before HAINES, DEASY, and TESTER, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Debtor Virginia A. Traverse appeals the bankruptcy court's order granting summary judgment to the chapter 7 trustee on her counterclaim seeking to limit the scope of his ability to sell her home. We **AFFIRM.**

## BACKGROUND

In 2005, Traverse executed a mortgage on her home in favor of Washington Mutual Bank, F.A., as security for a $200,000.00 loan. Washington Mutual then sold the mortgage to JP Morgan Chase Bank, N.A. The mortgage, however, went unrecorded. Later, Traverse granted a second mortgage on the home in favor of CitiBank, N.A. to secure a line of credit. It was duly recorded. Well before filing for relief under the Bankruptcy Code,[1] Traverse recorded a homestead declaration in accordance with Massachusetts law.

In her bankruptcy schedules, Traverse valued her home at $223,500.00, listed Citi-Bank's second mortgage claim of $29,431.04 and JP Morgan Chase's unperfected first mortgage claim of $185,777.30. Without challenge, she claimed a Massachusetts homestead exemption in the amount of $500,000.00.

Invoking his strong-arm powers under § 544, the chapter 7 trustee filed an adversary complaint seeking to avoid JP Morgan Chase's unrecorded mortgage and to preserve the mortgage lien for the benefit

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Pro-

tection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rules" shall be to the Federal Rules of Bankruptcy Procedure.

of the bankruptcy estate pursuant to § 551. Traverse filed a counterclaim seeking a declaration that, even should the trustee successfully avoid and preserve the JP Morgan Chase mortgage lien, he could not sell her home without first foreclosing the mortgage in accordance with state law. She asserted that, because the mortgage was not in default, he could not successfully foreclose and, as a result, could not sell the real estate. Traverse argued that the trustee could sell only the mortgagee's interest.

The trustee moved for summary judgment on his claims and on Traverse's counterclaim. JP Morgan Chase acceded. Traverse objected to entry of summary judgment on her counterclaim. The trustee characterized her objection as premature, because he had not yet moved to sell the home. Even if the counterclaim were ripe for decision, the trustee argued he was entitled to judgment as a matter of law, because the avoided mortgage created equity in the home, which he was entitled to liquidate for the benefit of the bankruptcy estate. Traverse maintained that after avoiding the mortgage, such rights as the trustee obtained remained subject to her rights of redemption and possession. Thus, she argued, until she defaulted on the mortgage note, the trustee could not sell the home because he could not foreclose the mortgage. The court granted the motion, ordering that the mortgage lien be avoided and preserved for the benefit of the estate. This appeal ensued.

### JURISDICTION

#### I. Finality in the Ordinary Sense

■ Before addressing the merits of an appeal, we must determine that we

have jurisdiction. *See Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998). We are empowered to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (internal quotations and citations omitted), whereas an interlocutory order " 'only decides some intervening matter pertaining to the cause, and ... requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.' " *Id.* (quoting *In re Am. Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). "An order granting summary judgment, where no counts remain, is a final order." *Harrington v. Donahue (In re Donahue),* BAP No. NH 11–026, 2011 WL 6737074, 2011 Bankr.LEXIS 4951 (1st Cir. BAP Dec. 20, 2011); *see also Maali v. United States (In re Maali),* 432 B.R. 348, 351 (1st Cir. BAP 2010). As the summary judgment order disposed of both counts of the complaint and the counterclaim, it is a final order.

#### II. Full Speed A–*Stern*

■ Traverse's initial salvo targets this Panel's jurisdiction through the fog of an attack on the finality of the bankruptcy court judgment.[2] She argues that the bankruptcy court lacked jurisdiction to enter a final order on her counterclaim, in-

**2.** Traverse's brief initially defines her objections based on the bankruptcy court's lack of subject matter jurisdiction, but as her arguments develop, it is clear this is a mischaracterization. As such, we address her argu-

ments based on a dispute as to the lower court's authority to enter a final judgment in this matter. *See Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.),* 702 F.3d 553 (9th Cir.2012).

voking the Supreme Court's holding in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). She does not dispute that the bankruptcy court had *statutory* authority under 28 U.S.C. § 157 to enter a final judgment regarding her counterclaim; rather, she challenges the bankruptcy court's *constitutional* authority to do so.

We readily acknowledge that a constitutional infirmity in the lower court's order would be a matter we could not ignore. At the same time, we cannot help but wonder why, if such a defect exists, she has posited her appeal here, where, absent waiver of the defect, the lack of an order's constitutional finality would nullify our jurisdiction. She cannot have it both ways (i.e., "Reverse the lower court … wait, no, you can't do that … dismiss the appeal."). We would be inclined to consider the filing of an appeal to the Panel as manifesting acknowledgment that the bankruptcy court permissibly lodged a final judgment, if by no other way than via her consent. *See Stern v. Marshall,* 131 S.Ct. at 2607–08; *Pearson Educ., Inc. v. Almgren,* 685 F.3d 691, 694 (8th Cir.2012); *Howison v. Milo Enters., Inc.,* No. 2:11–mc–204–JAW, 2012 WL 1854309 (D.Me. May 21, 2012). We are, however, aware of at least one pre-*Stern* First Circuit decision indicating that appealing to the Panel is not a binding acknowledgment of a bankruptcy court judgment's finality. *Sheridan v. Michels (In re Sheridan),* 362 F.3d 96 (1st Cir. 2004). Be that as it may, however, we need not tarry here. Traverse's warnings about our ability to hear the case after the decision in *Stern* need not be heeded. The bankruptcy court properly, and constitutionally, entered final judgment in this case.

The Supreme Court's decision in *Stern v. Marshall* recognized constitutional limitations on the bankruptcy court's authority under 28 U.S.C. § 157(b) to enter final orders. *Murphy v. Felice (In re Felice),* 480 B.R. 401, 411 (Bankr.D.Mass.2012) (citing *Stern v. Marshall,* 131 S.Ct. at 2618). In *Stern v. Marshall,* the Supreme Court held that, as an Article I court, bankruptcy courts lacked constitutional authority to enter a final judgment on a state law counterclaim brought by the debtor against a creditor to her estate. 131 S.Ct. at 2620. First concluding that the counterclaim was a "core" proceeding and that the bankruptcy court had statutory jurisdiction under 28 U.S.C. § 157(b)(2)(C) to decide it, the Court noted: "Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final judgment on [the debtor's] counterclaim, Article III of the Constitution does not." *Id.* at 2604–08. The Court concluded that such an exercise of judicial power by an Article I bankruptcy judge was unconstitutional in the *Stern* case because the action at issue was a state tort action that existed without regard to any bankruptcy proceeding. *Id.* Therefore, despite being a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2), final resolution of the debtor's counterclaim required adjudication by an Article III judge. *Id.*

Traverse's *Stern*-based argument is spawned by her failure to appreciate the essence of the trustee's powers, and the bankruptcy court's powers to oversee the exercise of those powers. Rather than acknowledging that the trustee is, in essence, the owner of a property subject to two mortgage liens (one of which now secures value for her estate), Traverse portrays him as an involuntary assignee of JP Morgan Chase's lien position *subject to* mortgage covenants. She characterizes the trustee's attempt to wring value from her home as dependent on the mortgage contract's terms and state foreclosure law. Thus, she questions the bankruptcy court's constitutional authority to enter final judg-

ment because she contends the trustee is seeking to "augment the bankruptcy estate" by way of a purely state law cause of action (*i.e.*, mortgage foreclosure). Traverse's notions are, put simply, wrongheaded.

■ The trustee's exercise of strongarm powers of lien avoidance and preservation for the estate are an exercise of Code-created rights.[3] Without question, that exercise is statutorily "core" under 28 U.S.C. § 157(b)(2)(K). And there is absolutely nothing in *Stern* that impugns the bankruptcy court's ability to constitutionally decide such questions with finality.[4] The grant of summary judgment did not resolve a state law counterclaim. Traverse's counterclaim sought to forestall the trustee's liquidation of estate assets, an eventuality that could only take place in a bankruptcy case. In and of itself, the counterclaim implicates statutorily core matters, 28 U.S.C. § 157(b)(2)(N), (O), that lie outside *Stern*'s purview.[5]

## STANDARD OF REVIEW

Appellate courts apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir. 2010). We apply a *de novo* standard of review to orders granting summary judgment. *Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 17 (1st Cir. BAP 2009).

## DISCUSSION

### I.  The Summary Judgment Standard

Fed.R.Civ.P. 56 is applicable in adversary proceedings in bankruptcy cases pursuant to Fed. R. Bankr.P. 7056. Summary judgment is appropriate when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). If factual issues exist "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Borges v. Serrano–Isern*, 605 F.3d 1, 4–5 (1st Cir.2010); *Estrada v.*

---

3. These powers are creatures of §§ 544 and 551, and may only be prosecuted by bankruptcy trustees (or debtors in possession) on behalf of bankruptcy estates. *See Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 187 (Bankr.S.D.N.Y.2011); *Goldstein v. Eby–Brown, Inc. (In re Universal Mktg., Inc.)*, 459 B.R. 573 (Bankr.E.D.Pa.2011).

4. The holding in *Stern* is a "narrow one," and there the constitutional infirmity in the bankruptcy court's reliance upon 28 U.S.C. § 157(b)(2)(C) to enter final judgment was limited. 131 S.Ct. at 2620. *Stern*'s holding was intended to have few "practical consequences," and the Court did "not think that removal of counterclaims ... from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute...." *Id.* at 2619, 2620.

5. Subsequent to obtaining summary judgment, the trustee obtained an order authorizing him to sell Traverse's home. She did not appeal that order. Consequently, the trustee, while acknowledging that no sale has taken place, asserts this appeal may be moot. Although mootness implicates our jurisdiction, *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *Rochman v. Northeast Utils. Serv. Group (In re Pub. Serv. Co. of N.H.)*, 963 F.2d 469, 471 (1st Cir.1992); *Kasparian v. Conley (In re Conley)*, 369 B.R. 67, 70–71 (1st Cir. BAP 2007), we need not address it where, as here, resolution of the appeal on the merits obviates the necessity that we consider it. *See Miles v. Beneficial Mass., Inc. (In re Miles)*, 436 F.3d 291, 293–94 (1st Cir.2006); *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 59 (1st Cir. 2003).

*Rhode Island,* 594 F.3d 56, 62 (1st Cir. 2010). Here, the parties agreed that there were no material facts in dispute, and summary judgment was appropriate.

## II. Analysis

■ There is no dispute that the trustee successfully and lawfully avoided JP Morgan Chase's mortgage under § 544, or that he is able to preserve some benefit to the estate pursuant to § 551. The only dispute is exactly *what* that benefit may be. Traverse would have it that the trustee merely replaces JP Morgan Chase as mortgagee. The trustee contends he now is in the shoes of a homeowner. Specifically, he asserts that he may sell the property, satisfying the liens encumbering it, funding Traverse's exemption in proper order (if proceeds reach that far), and holding any surplus for the estate (if the proceeds reach *that* far).

The trustee is correct. Before bankruptcy, Traverse could have sold her home, providing she allocated sufficient proceeds to answer for the liens affixed to it. Back then, had she sold her home, her obligations to JP Morgan Chase and CitiBank would have had to have been satisfied to convey clear title. (That there may have arisen a priority battle between mortgagees would be of no consequence to her; she was bound to answer for each.) When Traverse filed her petition, all of her legal and equitable interests in her home became property of her bankruptcy estate under § 541(a)(1). As Traverse herself concedes, her rights to possession and redemption transferred to the estate, subject to the mortgage liens. With a valid homestead exemption, Traverse extricated from the estate such value as might remain after the mortgages were satisfied. Avoiding JP Morgan Chase's mortgage did not

render the trustee an assignee, subject to mortgage covenants and state foreclosure law. Rather, it left him in the homeowner's shoes, with the added benefit that funds that would otherwise be allocated to "pay off" the JP Morgan Chase mortgage would enrich the estate. JP Morgan Chase still possessed its contractual right to payment, now shorn of security, and would take from the estate *pro rata* with other unsecured creditors. This is the meaning of avoidance and preservation.[6] A debtor may obtain the benefit of lien avoidance under limited circumstances, where the lien attached in a nonconsensual transaction and other circumstances, absent here, obtain. 11 U.S.C. § 522(f), (g), (h), (i).

Summary judgment was properly entered. The trustee dutifully exercised his strong-arm powers, providing the estate the benefit of JP Morgan Chase's mortgage lien. Traverse retains all the benefits of the homestead exemption she holds, all that she could have expected when she claimed it.

### *CONCLUSION*

The bankruptcy court did not err in granting summary judgment in favor of the trustee, and we therefore **AFFIRM.**

---

**6.** "Any transfer avoided under section . . . 544 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.